Hand-Delivered

FILED
CHARLOTTE, NC

FEB 28 2025

US DISTRICT COURT
WESTERN DISTRICT OF NC

**UNITED STATES DISTRICT COURT**
For the Western District of North Carolina

**MICHAEL C. LOEFFLER, on behalf of his minor child, C.H.L.,**
    Plaintiff,
V.

**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION (NCAA),**
    Defendant.

Case No.: 3:25-CV-152-MOC

# COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

Plaintiff, Michael C. Loeffler, a U.S. citizen residing in Charlotte, NC, brings this complaint on behalf of his minor child, C.H.L., a U.S. student-athlete whose full name is withheld for privacy. Proceeding pro se, Plaintiff seeks to establish fair eligibility standards for U.S. student-athletes affected by the NCAA's rules. Plaintiff submits this complaint on behalf of his minor child, who remains under the age of 18. Plaintiff asserts that the National Collegiate Athletic Association's (NCAA) policies have harmed U.S. punters by unfairly favoring international athletes.

## I. INTRODUCTION

### PURPOSE OF THE ACTION

Plaintiff challenges the NCAA's football eligibility rules, which permit older, professional international athletes—particularly Australian punters—to join U.S. collegiate football programs under flexible age and experience criteria. Unlike other NCAA sports such as ice hockey, tennis, and skiing, which prohibit prior professional experience and impose age limits, football eligibility rules lack uniformity, creating an unfair competitive imbalance. The NCAA's inconsistent eligibility standards create an unfair advantage for older, professionally trained international punters, particularly from Australia, while disadvantaging U.S. student-athletes. Because of the NCAA's lenient football eligibility guidelines on age and professional experience, many college football programs instead recruit older, physically mature Australian punters. Current NCAA rules allow Australian punters to maintain collegiate eligibility without age restrictions, despite their prior professional experience in the Australian Football League. As a result, they enter college with significantly greater expertise and physical maturity than

18-year-old American student-athletes, giving them a competitive edge that younger players have not had the opportunity to develop.

Plaintiff C.H.L. is an accomplished high school punter in Charlotte, North Carolina, who aspires to play collegiate football. The NCAA's current rules create an unfair competitive advantage for older Australian punters, whose prior professional experience in Australian Football disadvantages U.S. student-athletes. The relief sought is not to exclude international players but to enforce consistent eligibility standards across all collegiate sports.

**OVERVIEW OF THE DISPUTE**

The NCAA currently allows Australian punters to join college football programs at significantly older ages–often in their mid-20s–after years of professional experience in Australian Football, a sport structurally similar to American football in terms of the punting proficiency. This extended pre-collegiate professional training provides them a substantial advantage over U.S. student-athletes, who normally enter college at 18 or 19 with only high school experience.

While the NCAA applies strict age and experience limits in other sports which aim to prevent competitive imbalances arising from older, professional athletes, it does not apply these same standards to football. Plaintiff argues that the NCAA's inconsistent application of eligibility rules violates its avowed commitment to fair competition and equal opportunity.

## II. JURISDICTION AND VENUE

### JURISDICTION
This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. §1343 (civil rights jurisdiction) as the claims arise under the Equal Protection Clause of the U.S. Constitution and federal antitrust laws. Public universities that enforce NCAA rules—particularly those receiving federal funding—subject NCAA policies to constitutional scrutiny.

### VENUE
Venue is proper in this Court because Plaintiff resides in this district, and substantial events giving rise to the claim occurred within this district.

## III. PARTIES

### PLAINTIFF
Plaintiff, Michael C. Loeffler, is a U.S. citizen residing in Charlotte, NC, and the father of minor child C.H.L., a high school punter aspiring to play college football. Plaintiff asserts NCAA policies unfairly favor international punters at the expense of U.S. student-athletes.

## DEFENDANT

Defendant, the National Collegiate Athletic Association (NCAA), is an unincorporated association with its principal office located in Indianapolis, Indiana. The NCAA governs intercollegiate athletics in the United States and is responsible for setting and enforcing student-athletes' eligibility rules.

## IV. CLASS ACTION ALLEGATIONS

### CLASS DEFINITION

Plaintiff brings this action on behalf of himself and a class of similarly situated U.S. student-athletes impacted by NCAA eligibility policies. This proposed class is certified under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. This class includes all U.S. student-athletes who have lost scholarship opportunities or suffered diminished recruiting prospects due to these unfair eligibility rules.

### NUMEROSITY

The class is so numerous that joinder of all members is impracticable. Based on publicly available data, Australian punters held 46% of all FBS punting positions in 2023, with a 71% representation in the Power Two conferences (SEC and Big Ten). ProKick Australia reports having facilitated at least 270 Australian punters receiving NCAA football scholarships, displacing a significant number of U.S. student-athletes. Given the annual cycle of college recruiting and scholarship allocations, the number of affected U.S. punters is likely in the hundreds or thousands across multiple recruiting classes who have been or will be unfairly impacted by the NCAA's eligibility rules.

### COMMONALITY

The claims of all class members share common questions of law and fact, including but not limited to:

1. Whether the NCAA's eligibility policies disproportionately favor international athletes, particularly Australian punters, to the detriment of U.S. student-athletes.
2. Whether the NCAA's inconsistent application of age and experience restrictions across different sports violates principles of fair competition and equal opportunity.
3. Whether the NCAA's eligibility rules constitute an unfair trade practice under applicable state laws.
4. Whether the NCAA's policies amount to an unlawful restraint of trade under federal antitrust law.

### TYPICALITY

Plaintiff's claims are typical of the claims of the class. Plaintiff, on behalf of his minor child, asserts that the NCAA's policies have stifled opportunities for scholarships and roster positions

3

for U.S. punters, reducing their chances of securing scholarships and playing opportunities. Other class members have suffered or will suffer similar harms due to the same NCAA policies, making Plaintiff's legal claims representative of the broader class.

## ADEQUACY OF REPRESENTATION

Plaintiff will fairly and adequately represent the interests of the class. Plaintiff's interests align with those of all class members, as they seek the same relief—modification of NCAA eligibility policies to establish fair competition and uniform eligibility standards. Plaintiff has no conflicts of interest with other class members and is committed to pursuing this litigation to its resolution.

## PREDOMINANCE

The key legal and factual issues in this case are common across all class members and arise from the same NCAA eligibility policies, which grant international punters an undue competitive advantage. All class members' claims stem from the same NCAA eligibility policies and their impact on U.S. student-athletes. The legal questions regarding the NCAA's inconsistent application of age and professional experience restrictions, as well as their antitrust implications, predominate over any individualized issues.

## SUPERIORITY

A class action is the most efficient means of resolving these claims because:

1. The number of affected student-athletes is large, making individual lawsuits impractical and inefficient.
2. The cost of individual litigation would be prohibitive for many affected student-athletes, discouraging them from seeking relief.
3. A single judicial determination on the legality of the NCAA's policies will provide uniform relief to all affected student-athletes.

Given the widespread impact of the NCAA's eligibility policies, this case is well-suited for class certification under Rule 23(b)(2) because the NCAA has acted or refused to act on grounds that apply generally to the class, justifying declaratory and injunctive relief applicable to all class members.

## V. FACTUAL ALLEGATIONS

### THE IMPACT OF INTERNATIONAL ATHLETES

A. In 2023, Australians held 71% of the punting positions in the Power Two conferences (12 of 14 in the SEC, 8 of 14 in the Big Ten). In that same year, Australians accounted for 49% of the Power Five Conferences punting positions (34 of 69). Throughout the top tier Football Subdivision (FBS), 46% (61 of the 133 programs) had at least one Australian punter.

B. Conversely, only 15 percent of National Football League (NFL) punters (5 of 32) are Australian, accentuating that their disproportionate collegiate advantage only stems from lenient NCAA eligibility rules allowing older, physically mature Australian participants rather than superior ability. It is likely that these modest NFL numbers would be even lower if the collegiate age and experience advantage had not already prevented many American punters from developing their skills at the college level.

C. Most Australian punters enter college at ages that exceed those of graduating U.S. collegiate punters. Sports experts generally agree that peak athletic performance occurs between the ages of 24 and 28. However, NCAA guidelines allow Australians to compete in their physical prime, while American youths are still years away from reaching their peak.

**AGE AND EXPERIENCE DISPARITY**

a. U.S. student-athletes typically enter college at age 18 or 19 and must complete their eligibility within five years.

b. In contrast, Australian punters often enter U.S. universities in their mid-20s after refining their punting skills through years of professional competition in Australia. The sport of Australian football focuses primarily on punting, making its expertise directly applicable to the American punting position.

c. After completing their professional careers, aspiring Australian punters have almost invariably enlisted in ProKick, a 14-month Australian for-profit punting training program that fully leverages the NCAA's inequitable guidelines. ProKick all but guarantees its trainees, who pay tuition exceeding $15,000, will receive a full scholarship to punt in the United States upon completion of their pre-collegiate training school.

d. This age and experience disparity grants Australians an unfair competitive edge in developing their physical skills, leg strength, and technical punting expertise compared to American high school graduates who lack the equivalent timing opportunity to acquire a similar skill competency.

e. Generally, no one would ever expect ninth graders to compete with college freshmen for collegiate football positions; however, the average age gap between the Australians and Americans exceeds even this drastic comparison.

**IMPACT ON U.S. STUDENT-ATHLETES AND RESOURCES**

a. U.S. punters face reduced opportunities due to the developmental advantage of older, more experienced Australian athletes.

b. Scholarships and taxpayer-funded resources are disproportionately allocated to international athletes.

c. ProKick Australia's website reports that ninety-seven percent of its trainees are offered full scholarships to U.S. universities, displacing younger U.S. student-athletes.

**COMPARATIVE DISCRIMINATION**

a. The NCAA imposes age and experience restrictions on sports such as tennis, skiing, and ice hockey players due to the unfair size advantages and expertise gained through long-term experience that American younger athletes cannot duplicate. Allowing punters to gain proficiency through many years of Australian professional football that is unavailable to youths discriminates against U.S. student-athletes.

b. If the NCAA applied similar policies in other sports—such as allowing former professional Chinese athletes to dominate U.S. basketball rosters—it would likely be viewed as an unfair intrusion.

c. The NCAA's policies raise concerns about fairness, equal protection, and competitive integrity in collegiate athletics. ProKick's website reports that 270 of its trainees have secured scholarships at U.S. universities for a total benefit of $54 million in scholarships. This highlights the disproportionate allocation of resources to international athletes while reducing opportunities for domestic talent. Many U.S. punters who previously would have earned scholarships are now offered only walk-on positions. However, with the new NCAA guidelines restricting football roster sizes to 105, most walk-on punting positions will be eliminated, thereby suppressing the only remaining viable opportunity for many U.S. punters to gain the expertise to succeed.

## RACIAL DISPARITY IN PUNTING POSITIONS

Despite the NCAA's stated commitment to diversity and inclusion, there has been a noticeable lack of Black punters in college football. More significantly, among the influx of Australian punters who have entered the NCAA system, there have been no known Black Australian punters recruited or awarded scholarships at the collegiate level.

This absence raises concerns about whether the NCAA's eligibility policies—particularly those favoring older international athletes—have created systemic barriers that disproportionately impact Black athletes seeking punting opportunities. By prioritizing international players who develop through specialized training programs like ProKick Australia, the NCAA may be reinforcing an exclusive pipeline that limits access for Black athletes in the U.S. and abroad.

The lack of racial diversity within the punting position further demonstrates how these policies create unintended disparities. Without consistent eligibility standards across sports, Black student-athletes interested in kicking positions may find themselves at an unfair disadvantage,

particularly as the pathway to NCAA punting positions remains largely dominated by international recruits

## VI. LEGAL CLAIMS

## COUNT I – DISPARATE IMPACT

The NCAA's eligibility rules, though facially neutral, have disproportionately harmed U.S. punters, violating fair competition principles and resulting in disparate impact. Title VI of the Civil Rights Act of 1964 42 U.S.C. § 2000d prohibits policies with discriminatory effects in federally funded programs, and since public universities enforce NCAA rules, these policies merit legal scrutiny. The eligibility guidelines lack fairness as these rules disproportionate harm American student-athletes by:

a. Extending eligibility to older, more experienced professional international athletes to compete in collegiate sports specifically designed for the 18-22-year-old demographic is unjust. The NCAA's allowance of older Australians at the expense of younger American participants is a violation of fairness principles and effectively discriminates against their younger ages who are unable to benefit from those vital additional years of experience.

b. Creating a vast statistical disparity that reduces opportunities for natural-born U.S. citizens.

c. Misallocating scholarships and resources funded by U.S. taxpayers.

d. Leading to adverse effects violating fairness and equal treatment principles under federal law.

e. While not necessarily intentional on the NCAA's part, the influx of Australian punters has had a disparate impact on racial representation in the kicking positions, widening the gap as none of the 270 Australian punters have been Black.

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, prohibits policies with discriminatory effects in federally funded programs. While Title VI primarily addresses intentional discrimination, courts have also recognized that policies with a disparate impact on a protected group can be challenged. The NCAA's eligibility rules, while neutral on their face, disproportionately disadvantage Black U.S. student-athletes, thereby violating the principles of equal opportunity enshrined in Title VI. While the NCAA does not receive federal funding, many of the institutions it governs do.

## COUNT II – AGE DISCRIMINATION AND INCONSISTENT APPLICATION OF AGE RESTRICTIONS

The NCAA's current policies create age-based disparities that disadvantage U.S. student-athletes by allowing older professional international athletes, particularly Australian punters, to compete against younger domestic athletes. By permitting older professional athletes to participate at U.S. college football programs, the NCAA creates an imbalance undermining fair competition and equal opportunity.

Legal precedents have upheld age restrictions in sports to maintain fair competition. In *Sandison v. Michigan High School Athletic Association*, the court supported age limits, emphasizing their role in ensuring equitable play and safety. Similarly, in *Pottgen v. Missouri State High School Activities Association*, the court recognized that age restrictions are essential to prevent competitive advantages and potential safety risks associated with older participants competing against younger students. In both of these cases, the court emphasized the importance of age limitations for our youths so strongly that it even denied age extension waivers for children with disabilities. The NCAA egregiously permits these vast age discrepancies in football, yet not to benefit physically challenged students, but rather to accommodate former professional international athletes.

Moreover, the NCAA applies age restrictions in other sports, meaning their neutral policy is actually arbitrary. For instance, the NCAA Bylaw 14.2.3.2 imposes strict age limits for NCAA ice hockey, requiring players to enter college before turning 21 years of age to prevent older, more experienced athletes from dominating the competition. The NCAA rightfully sought to ensure a level playing field for younger student-athletes. Ice hockey rules also specifically exclude all players with any prior professional experience, contending that this expertise provided an unfair advantage.

Inexplicably, the NCAA does not apply age restrictions to football, particularly those from Australia, who are allowed to enter college at significantly older ages after gaining extensive professional experience in Australian football. Yet, the NCAA would rule American youths ineligible had they participated in a single semi-pro football game. If the NCAA felt the need to enact these protective guidelines in hockey, why would they not do likewise in an equally physically demanding strength sport such as football?

This inconsistent application of age-based eligibility across different sports discredits the NCAA's proclaimed commitment to fair and equal competition. The NCAA's inconsistent rule applications have created a significant discrepancy that violates these principles under both the Equal Protection Clause and the NCAA's own policies, which should aim to provide fair and equal opportunities for U.S. student-athletes.

The NCAA's current policies create age disparities that undermine the integrity of collegiate sports and equitable treatment of U.S. student-athletes. Applying the NCAA's rule prohibiting prior professional performance while requiring all student-athletes to begin their collegiate sports

careers by age 21 would resolve this disparity and ensure fair competition without restricting access for similar aged and experienced international athletes.

## COUNT III – VIOLATION OF THE EQUAL PROTECTION CLAUSE

The NCAA's rules disparately favor international athletes by granting them an extended eligibility window and significant experience advantage. While the NCAA is a private organization, its policies are enforced by public universities, many of which receive federal funding and may be subject to constitutional scrutiny. Many NCAA-member institutions are public entities that must comply with federal laws, including the Equal Protection Clause, when implementing NCAA policies. As a result, these policies effectively create a system that disadvantages U.S. student-athletes.

The Equal Protection Clause of the Fourteenth Amendment mandates that no state shall deny any person within its jurisdiction the equal protection of the laws.

NCAA policies disproportionately favor international athletes over domestic ones, granting them an extended period of eligibility while maintaining restrictive age limits in other sports. This practice effectively discriminates against U.S. student-athletes in some sports without any legitimate justification.

For example, the NCAA imposes age restrictions in ice hockey players, requiring them to enter college before turning 21 years of age to maintain fair competition and prevent older, more physically developed players from dominating the sport. However, the NCAA applies no such restriction in football, particularly for international punters, creating a competitive imbalance. This arbitrary application of eligibility restrictions across different sports undermines the NCAA's stated commitment to fair play and equal opportunity.

Additionally, in *Brentwood Academy v. Tennessee Secondary School Athletic Association*, the Supreme Court ruled that a private athletic association could be subject to constitutional scrutiny when its rules are intertwined with public institutions. It further clarified that private athletic organizations may be subject to constitutional scrutiny when entangled with public institutions. The NCAA's pervasive influence over publicly funded universities—many of which receive substantial taxpayer funding—reinforces the argument that its eligibility rules should be subject to constitutional review. The inconsistent application of eligibility policies creates an unjustified distinction that disproportionately impacts domestic players, violating the Equal Protection Clause by establishing an arbitrary and unfair competitive disadvantage for U.S. student-athletes.

## COUNT IV – ANTITRUST VIOLATIONS

The NCAA's eligibility policies restrict competition in the college football market by systematically favoring international punters with extensive prior professional experience while

suppressing opportunities for U.S. athletes. By allowing a concentrated pipeline of older, professionally trained punters from Australia to dominate the market, the NCAA artificially limits the ability of younger American punters to compete for scholarships and roster spots, thereby restraining trade in the student-athlete recruitment market.

Antitrust laws, particularly Sections 1 and 2 of the Sherman Act, prohibit business practices that unreasonably restrain trade or competition. The NCAA has faced multiple antitrust challenges concerning its regulations, demonstrating that its control over collegiate athletics may violate federal antitrust principles.

In *NCAA v. Alston*, the Supreme Court ruled that NCAA restrictions on education-related benefits for student-athletes unreasonably suppressed competition in the labor market for student-athletes. Similarly, recent cases have scrutinized the NCAA's limitations on athlete compensation and transfer rules, reinforcing that NCAA policies unlawfully restrict market competition and limit opportunities for student-athletes.

The NCAA's eligibility rules for punters create an artificial recruitment funnel, concentrating scholarship opportunities within a closed international training program—ProKick Australia—rather than allowing open, competitive access for all student-athletes. By favoring older, professionally trained Australian punters, the NCAA distorts the collegiate recruitment market, reducing the pool of viable American punters and limiting consumer choice for college programs.

Additionally, in *Board of Regents v. NCAA*, the Supreme Court ruled that the NCAA's control over television broadcasting rights for college football violated antitrust laws by unreasonably restraining competition. While this case focused on television rights, it established the broader precedent that NCAA-imposed restrictions can violate federal antitrust laws when they create an unjustified competitive advantage for certain athletes or institutions.

Similarly, the NCAA's eligibility policies function as a restraint of trade by disproportionately limiting opportunities for U.S. punters while favoring international recruits with prior professional experience. This artificial advantage distorts the market for collegiate punters, effectively reducing competition and creating a barrier to entry for younger American athletes.

The NCAA's eligibility restrictions have created a de facto anti-competitive pipeline, where U.S. punters face diminished scholarship and roster opportunities due to the influx of older, more experienced international punters. These policies mirror other restraints on trade that courts have found unlawful under antitrust laws. To restore competitive balance, the NCAA must revise its eligibility rules to eliminate unfair market distortions and ensure that U.S. student-athletes have equal access to collegiate athletic opportunities.

## COUNT V – UNFAIR TRADE PRACTICES

The NCAA's eligibility policies distort and restrict market competition, disadvantaging U.S. athletes by reducing their access to scholarships and roster spots, thereby violating principles of fair trade. North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA), codified at Gen. Stat. § 75-1.1, prohibits unfair or deceptive acts or practices in or affecting commerce. The NCAA's eligibility rules constitute unfair practices that adversely affect the competitive opportunities of North Carolina student-athletes, thereby impacting commerce within the state.

## COUNT VI – DUE PROCESS

The NCAA's eligibility rules for college football arbitrarily allow older, professional-experienced international athletes to compete while enforcing stricter eligibility standards in other sports. This inconsistency creates a lack of clear and predictable standards, violating both substantive and procedural due process.

Substantive due process requires that rules and regulations be reasonable, non-arbitrary, and consistently applied. The NCAA's failure to impose uniform eligibility standards across sports results in unfair treatment of U.S. student-athletes. In *Pottgen v. Missouri State High School Activities Association* and *Sandison v. Michigan HSAA*, courts upheld age restrictions to preserve fair competition and protect younger student-athletes from undue disadvantages. However, in contrast, the NCAA's football policies allow international athletes to enter college at significantly older ages, undermining the principles of competitive fairness.

Moreover, the NCAA imposes strict eligibility rules in sports such as ice hockey, requiring players to enter before turning 21 of age, while making no such age restrictions for football. This arbitrary and inconsistent rule-making prevents student-athletes from having a fair opportunity to compete and creates unpredictable disadvantages for U.S. punters. The NCAA's failure to apply clear, uniform eligibility criteria across all collegiate sports is capricious and violates the fundamental due process protections.

The recent *Fox Sports San Antonio* investigation into ProKick Australia revealed troubling allegations that certain international players have fraudulently gained NCAA eligibility through falsified academic records and misrepresentation of prior college experience. This raises serious due process concerns, as NCAA institutions appear to be admitting players based on misleading documentation, while U.S. punters must comply with strict eligibility verification. The report includes testimony from recruiting coaches and trainers who claim that some ProKick punters falsified GPA scores and concealed prior university attendance, enabling them to qualify for NCAA scholarships they would not have otherwise received.

By failing to properly vet these applicants and allowing fraudulent eligibility claims to go unchecked, the NCAA's enforcement mechanism is arbitrarily disadvantaging U.S. student-athletes who are held to stricter standards. The NCAA must establish a transparent, consistent vetting process to prevent fraudulent eligibility claims and uphold due process for all student-athletes, ensuring that domestic and international players are subject to the same eligibility verification procedures.

Historically, the NCAA maintained a strict prohibition against any individual with prior professional experience participating in collegiate athletics. Over time, however, the NCAA has systematically relaxed its policies, allowing prior professional athletes to gain NCAA eligibility in multiple sports under various exceptions. This shift from rigid amateurism to increasingly flexible eligibility standards has turned what were once rare exceptions into routine allowances, creating systemic inequities. The NCAA's piecemeal loosening of these rules has disproportionately benefited international punters, who now routinely leverage these relaxed eligibility criteria to enter U.S. college football at older ages with extensive prior professional experience.

This departure from historically consistent amateurism standards has led to a lack of clear and predictable application of NCAA eligibility policies, violating substantive due process. Rather than applying a uniform, principled approach to amateur eligibility, the NCAA's fragmented rule modifications have arbitrarily disadvantaged U.S. punters, while providing international punters a well-established path to collegiate football that U.S. athletes cannot access.

Procedural Due Process requires that affected parties have a clear opportunity to challenge rules that significantly impact them. The NCAA's eligibility policies lack a structured appeals process, leading to inconsistent enforcement and disadvantaging U.S. punters. While domestic athletes face strict compliance measures, international recruits—some with prior professional experience—secure scholarships with little oversight. Given the substantial career and financial stakes, due process demands a transparent and enforceable review system with uniform standards for all student-athletes.

To remedy these violations, the NCAA must implement clear, consistent eligibility guidelines and a formal appeals process. Establishing a uniform age restriction and prohibiting prior professional experience across all NCAA sports would create a fairer playing field. Additionally, a structured mechanism for student-athletes to contest eligibility decisions would ensure accountability and equal opportunity.

## VI. RELIEF SOUGHT

Plaintiff respectfully requests that this Court grant the following relief:

### A. Declaratory Relief

1. A declaration that the NCAA's current football eligibility rules violate the following legal protections:
   - The Equal Protection Clause of the Fourteenth Amendment by disparately favoring international punters over U.S. student-athletes.
   - The Sherman Antitrust Act by artificially restraining competition in collegiate football recruitment.
   - Federal and state unfair trade practices laws by misallocating recruitment opportunities and resources to international punters.
2. A declaration that the NCAA's failure to impose uniform eligibility standards across sports constitutes an arbitrary and capricious rulemaking practice that disadvantages U.S. student-athletes.

---

## B. Injunctive Relief (Under Rule 23(b)(2))

An injunction requiring the NCAA to:

1. **Adopt uniform eligibility standards** for all NCAA sports, ensuring:
   - A consistent age limit for collegiate eligibility across all NCAA sports.
   - A prohibition on prior professional participation in comparable disciplines for football, consistent with other NCAA sports such as hockey, tennis, and skiing.
2. **Immediately cease enforcement** of its current football eligibility policies, which unfairly benefit international punters by allowing them to:
   - Compete at significantly older ages than domestic student-athletes.
   - Retain eligibility despite prior professional experience in Australian football.
3. **Implement a transparent and structured appeals process** for student-athletes to contest eligibility rulings, ensuring:
   - All student-athletes are subject to the same verification and enforcement standards regardless of national origin.
   - Affected student-athletes can challenge eligibility decisions that negatively impact their scholarship and recruitment prospects.

---

## C. Compensatory & Monetary Relief (Under Rule 23(b)(3))

1. Award economic damages to affected U.S. student-athletes for:
   - Lost scholarship opportunities resulting from NCAA policies that disproportionately favored international punters.
   - Diminished recruitment prospects, as younger U.S. punters were unfairly displaced by older, professionally trained Australian punters.

- Financial losses, including lost tuition assistance and career development opportunities.
2. The amount of damages shall be determined at trial, based on:
   - Expert economic analysis of scholarship values and recruitment data.
   - Historical records of NCAA punting rosters and recruiting cycles.

---

## D. Class Certification

Plaintiff seeks class certification under Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure to remedy the systemic and economic harm caused by the NCAA's eligibility policies.

1. **Injunctive Relief under Rule 23(b)(2):**
   - The NCAA has acted, or refused to act, on grounds that apply generally to the class, making injunctive relief appropriate.
   - The class seeks a uniform, equitable eligibility standard across all NCAA sports.
2. **Damages under Rule 23(b)(3):**
   - The class seeks monetary damages for lost scholarships and recruitment opportunities.
   - Common legal and factual issues predominate, making a class action the superior method for resolving these claims.

## E. Attorney's Fees and Litigation Costs

Pursuant to 42 U.S.C. § 1988, Plaintiff requests reasonable attorneys' fees and litigation **costs,** as this action seeks to enforce constitutional rights under the Equal Protection Clause and protect fair market competition under federal antitrust laws.

## VII. CONCLUSION

For the reasons stated, Plaintiff respectfully requests that this Court grant the relief outlined above to ensure that NCAA policies uphold fairness, equality, and competitive integrity in collegiate athletics, providing equal opportunities for U.S. student-athletes. This Court's intervention is necessary to rectify systemic inequities in NCAA eligibility policies, ensuring that all student-athletes, regardless of nationality, compete on a fair and level playing field while also compensating those harmed by these unfair practices.

Respectfully submitted,

*[signature: Michael C. Loeffler]*

Michael C. Loeffler
734 Cherokee Road
Charlotte, NC 28207
704.529.1233
mike@quailhollow.us
Date: February 28, 2025